UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL NO. 06-330-REW

NATHAN COUCH and
LINDSEY GREGORY                                              PLAINTIFFS


vs:                              OPINION AND ORDER


NORTHLAND INSURANCE COMPANY
and JACKIE ADAMSON                                           DEFENDANTS

* * * * * * * *

In this action, Plaintiffs Nathan Couch ("Couch") and Lindsey Gregory ("Gregory") sued Freedom Transportation Group ("Freedom") and its employee Richard Pentecost ("Pentecost") in connection with a motor vehicle accident that occurred in London, Kentucky on October 7, 2005. The complaint also named Northland Insurance Company ("Northland"), who was Freedom's insurer, and Northland claims agent Jackie Adamson ("Adamson") as Defendants. Plaintiffs allege that Northland and Adamson acted in bad faith with respect to settlement of certain claims related to the accident.

On July 27, 2006, after Plaintiffs had initiated a state-court action, Defendants removed the matter to federal court, on diversity, pursuant to 28 U.S.C. §§ 1441 and 1332. *See* DE #s 1 and 15. By agreed order, the District Court dismissed as settled the complaint and claims against Defendants Freedom and Pentecost on January 4, 2007. *See* DE# 16. The action between Defendants Northland and Adamson is still pending. *See id.* With the consent of the parties, pursuant to 28 U.S.C. §

1

636(c), the District Court assigned the case to this Court for all proceedings and final disposition. *See* DE#19.

Defendants Northland and Adamson now move for a summary judgment on the outstanding claims. *See* DE# 21.  The Court has fully considered the record, including said motion, Plaintiffs' response, and Defendants' reply.  *See* DE#s 21, 23, and 24.  For the reasons stated in this decision, the Court GRANTS Defendants' motion for summary judgment.

## I.      Factual Background

On October 7, 2005, at approximately 3:00 a.m., Plaintiffs allege that Defendant Richard Pentecost parked a "semi-truck," owned by Defendant Freedom, at the top of a hill on Hicks Lane in London, Kentucky.  Plaintiffs believe Pentecost negligently failed to apply the emergency brake. *See* DE# 1, Complaint ¶ 8.

For reasons not determined, the truck subsequently traveled downhill approximately one hundred yards and crashed into the residence of Plaintiff Nathan Couch.  Plaintiff Lindsey Gregory, Couch's girlfriend, was at Couch's residence on the night of the accident.  Both Plaintiffs were sleeping when the truck impacted the Couch residence.  *See id*.

Defendant Northland provided Freedom with motor vehicle insurance at the time of the incident.  *See id*. ¶ 5.  Northland assigned the case to its adjuster,  Defendant Jackie Adamson.  *See id*. ¶ 17.  Plaintiffs' allege that Adamson did not negotiate in good faith and "frustrated the claims process at every turn," which ultimately "forc[ed]" Plaintiffs to file suit, as to these Defendants.  *See* DE# 23, Pl. Support Memo at 1.  Specifically, Plaintiffs state that they submitted an initial demand under Freedom's insurance policy on April 26, 2006.  *See id*.  Nearly one month later, after "repeated" phone calls and emails, Plaintiffs explain that Adamson finally responded with a

counteroffer on May 25.  *See id.* at 1-2.  Plaintiffs replied with a counter-demand on June 2, but Adamson did not return with a second counteroffer until June 26.  *See id.* at 2.  The parties purportedly exchanged another counteroffer and counter-demand that same day.  Sometime following this last exchange, Plaintiffs made a third unanswered counter-demand.  *See id.*

As a result of Adamson's alleged inaction, Plaintiffs filed suit in Laurel Circuit Court on June 28, 2006.  *See* Complaint.  As noted, certain parties reached agreement as to the liability of Defendants Freedom and Pentecost, resolving those claims. *See* DE# 16.  Plaintiffs' claims against Defendants Northland and Adamson, which relate only to the claims-handling process, remain. Plaintiffs base those claims exclusively on the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"). *See* Complaint ¶¶ 17-20.

The Court conducted a status conference on May 30, 2007.  At that conference, Plaintiffs, by counsel, expressly confirmed that the only claims at issue, as to both remaining Defendants, involve delay in the payment of basic reparation benefits to Plaintiffs.  Thus, the delay in payment that Plaintiffs characterize as indicating bad faith relates solely to BRB payments, as defined by KRS § 304.39-020(2).

Plaintiffs specifically argue that Adamson did not negotiate in good faith, as required by KRS § 304.12-230 of the UCSPA.  *See* Complaint ¶¶17-20.  Plaintiffs assert that Adamson tried to "thwart" Plaintiffs' "attempts to resolve this matter" and did not attempt to "effectuate *prompt*, fair, and equitable settlement of Plaintiffs' claims after liability became reasonably clear."  See Pl. Support Memo at 1-2; Complaint ¶ 17; KRS § 304.12-230(6).  As a result, Plaintiffs believe Adamson *delayed* the recovery of BRB payments by two to three months.  *See* Pl. Support Memo at 1.  Plaintiffs seek punitive damages, interest, and attorney fees in connection with these charges.

3

Defendants do not chronicle exactly when or how the negotiations unfolded. Instead, Defendants argue that the Kentucky Motor Vehicle Reparations Act ("MVRA"), the BRB payment obligation source, controls the unresolved claims in this action. Because Plaintiffs do not base their cause of actions on the MVRA, but rather the UCSPA, Defendants contend all claims must be dismissed. *See* DE #21, Def. Support Memo at 2-3. Alternatively, Defendants explain that delay alone cannot constitute bad faith under state law and that Plaintiffs have failed to allege actionable conduct. *See id*. at 3-4. Finally, Defendants state that Adamson cannot be liable individually for bad faith. *See id*. at 4-5.

The Court agrees with Defendants that Plaintiffs have sued only under the UCSPA, and that the MVRA preempts any such claim concerning delay in payment of basic reparation benefits. This holding is dispositive of the case and Plaintiffs' claims.

## II.    Standard of Review

This matter invokes the Court's diversity jurisdiction. *See* DE# 15; 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law, including the choice of law rules, of the forum state. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Whether jurisdiction is based on federal question or diversity, however, the Federal Rules of Civil Procedure apply to civil actions in federal court. *See Hayes*, 266 F.3d at 566.

As such, a federal court properly grants a summary judgment when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party has the initial burden of establishing the

4

absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986).  The nonmoving party must thereafter produce specific facts demonstrating a genuine issue for trial.  *See id.*

There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986).  Likewise, judgment as a matter of law is appropriate where the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof.  *See Celotex Corp.*, 106 S.Ct. at 2552.

### III.    Analysis

In this case, both sides agreed that Subtitle 39 of Title 304 of the Kentucky Revised Statutes, known as the "Motor Vehicle Reparations Act," substantially governs this dispute.  *See* Def. Support Memo at 2; Pl. Support Memo at 1.  Under the MVRA, "*every person* suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits."  KRS § 304.39-030(1) (emphasis added).  Thus, the MVRA reaches all persons involved in an automobile accident, even if the injured individuals, as here, were not actually operating or riding in a vehicle at the time of the incident.  *See* KRS § 304.39-050(1).

Persons, like Plaintiffs, who were "not making use of a motor vehicle" at the time of the automobile accident and injury are considered "pedestrians."  *See* KRS § 304.39-050(1).  Under state law, the insurer covering the vehicle that struck the pedestrian is charged with providing the injured pedestrian no-fault benefits.  *See id*.  In this case, Plaintiffs evidently have settled any underlying tort claim, and they have received full compensation for basic reparation benefits.  *See*

5

Def. Support Memo at 2 (citing full compensation); DE# 16; Pl. Support Memo at 2 (arguing delay in payment, not failure to pay).

However, Plaintiffs seek punitive damages in a separate cause of action under the Kentucky UCSPA against Defendants Northland and Adamson.  *See* Complaint ¶ 18.  Plaintiffs allege that Defendants violated KRS § 304.12-230, the UCSPA, by failing to negotiate the MVRA claim in good faith, which ultimately delayed payment of basic reparation benefits.[1]  *See id.* ¶ 17.  Plaintiffs also request attorney fees and 12% interest on the final MVRA settlement, under the UCSPA.  *See id.* ¶¶ 19-20.  Plaintiffs seek a recovery against the remaining Defendants *only* under the Unfair Claims Settlement Practices Act.  *See id.* at ¶ 17.

The Court finds that the MVRA plainly bars Plaintiffs' claim for punitive damages under the UCSPA.  Where an insurance claim results from an automobile accident, the "Kentucky MVRA preempts general insurance law ... and establishes remedies for violations of the [MVRA] statute."  *See Foster v. Ky. Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006).  Thus, the "MVRA is a comprehensive act which not only relates to certain tort remedies, but also establishes the terms under which insurers pay no-fault benefits, and provides for the penalties to which insurers are subjected if they fail to properly pay no-fault benefits."  *Id.*

Under the MVRA statutory scheme, the limited penalty for overdue payments is interest at a rate of 12% per annum.  *See* KRS § 304.39-210(2).  If the delay in payment was without reasonable foundation, the interest rate becomes 18% and attorney fees are also potentially recoverable.  *See id.*; KRS § 304.39-220(1).  According to the Kentucky Supreme Court, whose

---

[1]

KRS § 304.12-230 itself does not include a remedial provision.  Instead, Plaintiffs' claim for punitive damages under the UCSPA hinges on KRS § 446.070.  *See State Farm Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117 (Ky. 1988).

interpretation would control, these MVRA provisions are the "**exclusive remedy** where an insurance company **wrongfully delays** or denies payment of no-fault benefits." *See Foster*, 189 S.W.3d at 557 (emphasis added).

     *Foster*, as here, involved a suit under the MVRA that included a bad faith claim for punitive damages under KRS § 304.12-230 of the UCSPA.  *See id*. at 555, 557.  The Kentucky Supreme Court specifically addressed whether KRS § 304.12-230 conflicted with the MVRA remedies in KRS § 304.39-210 and § 304.39-220.  *See id*. at 555.  Because the Court held that the MVRA provisions are the "exclusive remedy," it rejected the UCSPA claim for punitive damages as "without merit."  *See id*. at 557.

     The Supreme Court's holding and analysis in *Foster* compels judgment for Defendants on Plaintiffs' bad faith claim for punitive damages under the UCSPA.  Plaintiffs premise their claim directly and completely on alleged wrongful delay in BRB payment, and *Foster* plainly holds that the MVRA provides the exclusive remedy in this context.  *See id*. (holding the MVRA provisions are the "**exclusive remedy** where an insurance company **wrongfully delays** ... payment of no-fault benefits")(emphasis added).

     State court decisions following *Foster* also support this result.  In *Hartley v. Geico Casualty Co.*, 2006 WL 2786929, at *1 (Ky. Ct. App. Sept. 29, 2006), the Kentucky Court of Appeals originally had held, in an action under the MVRA, that "a plaintiff alleging bad conduct on the part of the insurance carrier regarding the late payment of basic reparation benefits is permitted to bring a private cause of action for bad faith under [KRS § 304.12-230, the UCSPA]."  The Kentucky Supreme Court remanded the case for reconsideration in light of *Foster*.  *See id*.  On remand, the Court of Appeals held the bad faith claim under the UCSPA "barred" because the "MVRA provides

the exclusive remedy for the late payment of basic reparation benefits[.]"  *See id.* at *3.

Based on these authorities, the Court finds that Plaintiffs' UCSPA claim seeking punitive damages cannot succeed.  There is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Summary judgment on this claim is therefore appropriate.

Unlike punitive damages, interest and attorney fees are recoverable under the MVRA.  Here, Plaintiffs request 12% interest, but cite only to the UCSPA.[2]  *See* Complaint ¶ 20.

The MVRA provisions, not pled by Plaintiffs, are more generous.  Overdue MVRA benefit payments bear interest at a rate of 12% per annum, even if the insurer delayed payment in good faith.  *See* KRS § 304.39-210(2); *see also State Auto. Mut. Ins. Co. v. Outlaw*, 575 S.W.2d 489, 494 (Ky. Ct. App. 1978)(explaining payments that are merely overdue bear interest at a rate of 12%).  The interest rate is 18% per annum if the delay in payment was without reasonable foundation, which introduces a quasi-bad faith component.  *See* KRS § 304.39-210(2).  Therefore, KRS § 304.39-210(2) would be the proper statutory basis for the relief sought.  Plaintiffs' demand for interest under the UCSPA is misplaced and accordingly fails.   Again, the MVRA is the only remedial source as to delay in BRB payments.

Lastly, Plaintiffs request attorney fees.  Under the MVRA, the trial court may award attorney

---

[2]

Without providing a specific reference, it appears Plaintiffs are attempting to invoke KRS § 304.12-235(2), which states:

> If an insurer fails to make a good faith attempt to settle a claim within the time prescribed ... the value of the final settlement shall bear interest at the rate of twelve percent (12%) per annum.

KRS § 304.12-235(2).

fees in actions to recover overdue benefits if the delay or denial of payment was without reasonable foundation. *See* KRS § 304.39-220(1). Because the MVRA provisions are the exclusive remedy, KRS § 304.39-220 must govern the matter of attorney fees. In this case, Plaintiffs' request for attorney fees does not reference the MVRA or its standards. Rather, again, Plaintiffs seek relief under Subtitle 12 of Chapter 39. Consequently, Plaintiffs did not properly plead their attorney fee request, and on this record, Plaintiffs' demand for attorney fees fails.

### IV.   Conclusion

The MVRA governs the claims and relief at issue in this matter. That statute effectively bars Plaintiffs' claim for punitive damages under the UCSPA. Plaintiffs' claims for interest and attorney fees fail as pursued improperly under the UCSPA. Defendants are therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Defendants' summary judgment motion is GRANTED, and the Court will issue a separate Judgment.[3]

---

[3]
The Court alternatively would have dismissed based on Plaintiffs' failure to allege matters sufficient to establish bad faith under Kentucky law. Plaintiffs assert only delay–and fairly limited delay at that–with respect to negotiations. Delay alone is not bad faith, and an improper reason for delay or other outrageous conduct must exist to support a claim of bad faith. Plaintiffs' pleadings and briefing do not approach the required threshold, which would provide an alternative basis for dismissal of the bad faith claim. *See Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)("[M]ere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception."). Plaintiffs' allegations amount only to mere delay, a legally insufficient allegation.

This the 31st day of May, 2007.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**